IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACOBA HILLSAMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 6753 |
| vs. ) | |
| ) | Judge Virginia M. Kendall |
| WALMART, INC., d/b/a WALMART ) | |
| SUPERCENTER #2817, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION & ORDER

Plaintiff Jacoba Hillsamer ("Hillsamer") slipped on some hair conditioner that was spilled on the floor of the Walmart where she was shopping. Hillsamer sued Defendant Walmart, Inc. ("Walmart"), alleging it was negligent in failing to clean up the spill, warn its customers, and properly supervise the store premises and as a result Hillsamer was injured. (Dkt. 1–3). Walmart moved for Summary Judgment claiming that the spill was open and obvious and that it was not negligent. For the following reasons, the Court grants Walmart's motion [27].

BACKGROUND

The following facts are undisputed unless otherwise noted. Walmart is an international retail outlet incorporated in Delaware, with its principal place of business in Bentonville, Arkansas, and storefronts across the country. (Dkt. 32-9 ¶ 2). Hillsamer is an Illinois resident who frequents Walmart's Lansing, Illinois location. (Id. ¶¶ 1, 10). During the time relevant to this litigation, Walmart had more than seventy policies and procedures in place relating to safety, cleaning, and accident prevention in its stores. (Dkt. 36 ¶¶ 61–62 (requiring employees to safely stack merchandise, clean while they work, and conduct periodic daily inspection and maintenance), ¶ 69

1

(noting employees walk the store's aisles periodically throughout the day); *see also* Dkt. 32-5 at 3–4 (setting forth policies concerning workplace safety, including safety sweeps, slip-and-fall prevention, and spill clean-up, among others), ¶¶ 10–18 (citing the same list of policies)). For example, Walmart employees must inspect and clean specific aisles when notified of a spill or other safety issue. (Dkt. 36 ¶ 69). If an employee discovers or learns of a spill on Walmart's premises, they must stay with that spill until another employee cleans it. (*Id.* ¶ 66). That said, Walmart does not maintain records of its daily inspections. (*Id.* ¶¶ 63–64 (adding that Walmart thus lacks any log of inspections made on the date relevant to this case)). While Walmart promotes safety through its policies and procedures, one employee testified that safety is not Walmart's "top priority." (*Id.* ¶ 70 (citing testimony of Samantha Wooten Bomer); *see also* Dkt. 29-3 at 22–23 (stating "[i]t's definitely important. But—you know—we can't make it our top priority" when asked about the importance of safety to Walmart)).

Hillsamer was shopping for shampoo in Walmart's Lansing location on June 27, 2020. (Dkt. 32-9 ¶¶ 5, 9). After spending approximately ten to fifteen minutes in the shampoo aisle, Hillsamer slipped and fell on a "slippery substance" on the floor—later identified as hair cream. (*Id.* ¶¶ 12–13, 15, 33; *see also* Dkt. 1-3 ¶ 3). Hillsamer did not see the slippery substance before she fell but admits that "nothing would have prevented her from seeing [it] if she had looked down." (Dkt. 32-9 ¶¶ 14, 26; *see also* Dkt. 29-1 at 71 (providing Hillsamer's testimony admitting same)). When she fell, Hillsamer did not know the color or nature of the product she slipped on, how much product was on the floor, how it came to be there, nor how long the spill was present before her accident. (Dkt. 32-9 ¶¶ 16–17, 23–24, 25). Hillsamer saw no marks, dirt, or trash in the substance that might indicate how long it was on the floor. (*Id.* ¶ 22). Additionally, Hillsamer

did not hear the store make any announcements about the spill and never heard employees or other customers discussing it. (*Id.* ¶¶ 18–19, 21).

No Walmart employees saw Hillsamer fall, (*id.* ¶ 27), but three workers assisted after the fact—including Bomer, Michael King, and Leslie Marie Brady. (*Id.* ¶¶ 28, 30, 42, 47). Bomer arrived first at the scene, where she found Hillsamer on the floor. (*Id.* ¶¶ 31–32). Bomer saw hair cream on the floor and on Hillsamer's shoe. (*Id.* ¶ 32). She also noticed a hair cream container on the floor near Hillsamer. (*Id.*). None of the employees who assisted Hillsamer knew of the spilt hair cream before Hillsamer's fall, (*id.* ¶¶ 36–37, 43, 50; *see also* Dkt. 29-4 at 23 (King testifying that he was unaware of any spilt products in the shampoo aisle before Hillsamer's fall); Dkt. 29-5 at 14 (Brady testifying same); Dkt. 32-2 at 23 (Bomer testifying same)), or how long it was there. (Dkt. 32-9 ¶¶ 40, 44, 52; Dkt. 36 ¶ 63). Bomer and Brady also testified they did not know how the spilt hair cream spilled on the floor. (*Id.* ¶¶ 38, 53). Bomer, King, and Brady further testified that no Walmart employees knew of the spill, and that no customers informed them of it. (Dkt. 32-9 ¶¶ 39, 45, 54). Further, the employees saw no marks, dirt, or trash in the spilt hair cream. (*Id.* ¶¶ 41, 46, 54). Bomer ultimately filed an incident report concerning Hillsamer's slip and fall. (*Id.* ¶ 34 (noting that Bomer's incident report included photographs of the hair cream on the floor and smeared on Hillsamer's shoe)).

On October 9, 2020, Hillsamer filed a Complaint seeking damages for personal injuries she suffered from her fall, and Walmart removed the action to federal court on November 13, 2020. (*See* Dkt. 1-3; Dkt. 36 ¶ 55 (specifying that Plaintiff sustained hip and shoulder injuries); *see also* Dkt. 1 (providing Walmart's Notice of Removal from the Circuit Court of Cook County)). Hillsamer alleges that Walmart negligently failed to clean the hair-product spill that led to her injuries. (Dkt. 1-3; Dkt. 39-2 ¶ 5–6). Specifically, Plaintiff asserts that Walmart "[f]ailed to clean

its floor to remove [a] slippery substance; [f]ailed to place . . . warnings . . . that the floor was slippery; [f]ailed to properly supervise the premises; [and f]ailed to have and implement safety policies and procedures [to protect] its customers." (Dkt. 1-3 ¶ 4). Walmart denies Hillsamer's allegations. (Dkt. 6; Dkt. 32-9 ¶¶ 5–6). It asserts the spilt hair cream was an open and obvious condition, and Hillsamer breached her duty of reasonable care for her own safety by failing to properly look where she walked and acted otherwise negligently at the time of her fall. (Dkt. 32-9 ¶ 8). On December 3, 2021, Walmart moved for summary judgment. (Dkt. 27).

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). Summary judgment "requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party receives "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). *See also Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (internal citations omitted).

4

**DISCUSSION**

Illinois substantive law governs when, as here, federal courts in Illinois exercise diversity jurisdiction. *Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018). Under Illinois law, a plaintiff alleging negligence must prove: (1) the defendant owed plaintiff a duty, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused plaintiff's injuries. *Id.* (citing *Mt. Zion State Bank & Trust v. Consol. Commc'ns, Inc.*, 660 N.E.2d 863, 868 (Ill. 1995).

**A. Duty**

The existence of a duty is a question of law. *Roh*, 881 F.3d at 973 (citing *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990)). Businesses (landowners) generally owe customers a duty to maintain their premises in a reasonably safe condition for customers (invitees). *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016) (citing *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014)). Neither party disputes Walmart is a business operating the Lansing store where Hillsamer was a customer. (Dkt. 32-9 ¶¶ 2, 5, 9; Dkt. 28 at 2–3; Dkt. 32 at 4). But establishing a duty's existence is more complicated than finding a landowner-invitee relationship between the parties. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 1994) ("As a matter of practical application, . . . the concept of duty in negligence cases is very involved, complex and indeed nebulous." (internal citations omitted)). Illinois law requires the Court to weigh four factors in its duty analysis: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns v. City of Centralia*, 21 N.E.3d 684, 689 (Ill. 2014)); *see also Dunn*, 880 F.3d at 906 (listing same factors).

Illinois law does not require businesses to "foresee and protect against injuries" from all potentially hazardous "open and obvious" conditions on their premises. *Dunn*, 880 F.3d at 906

5

(citing *Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996)). Where an "open and obvious" condition exists, individuals must take reasonable care "to avoid any danger inherent in [the] condition." *Id.* (quoting *Bucheleres*, 665 N.E.2d at 832)). "Obvious" means that "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Bruns*, 21 N.E.3d at 690 (quoting Restatement (Second) of Torts § 343A, at 218 (1965)). Deciding "whether [a] condition is open and obvious depends not on [a] plaintiff's subjective knowledge but rather, on the objective knowledge of a reasonable person confronted with the same condition." *Dunn*, 880 F.3d at 907 (quoting *Racky v. Belfor USA Grp., Inc.*, 83 N.E.3d 440, 467 (Ill. App. Ct. 2017)). Typically, "[w]hether a dangerous condition is open and obvious" is a question of fact, but when "no dispute exists as to the physical nature of the condition," it becomes a question of law. *Dunn*, 880 F.3d at 906 (quoting *Bruns*, 21 N.E.3d at 690).

The parties agree that the spilt hair cream was an "open and obvious" condition. Hillsamer had been in the shampoo aisle for about ten to fifteen minutes before she fell, (Dkt. 32-9 ¶ 13; Dkt. 29-1 at 57), and she never suggested she had insufficient time or opportunity to fully observe her surroundings. Nor did she allege the spill was hard to see. The parties agree that the photos of the substance Hillsamer slipped on depict a light-colored substance contrasted against a dark floor. (Dkt. 29-2; *see also* Dkt. 29-1 at 62–66 (referencing defense Exhibit D, Dkt. 29-2, and Hillsamer agreeing photographs showed substance she slipped on)). Significantly, although Hillsamer testified that she did not notice the spilt hair cream, she admitted that nothing would have prevented her from seeing the slippery substance had she looked down. (Dkt. 32-9 ¶¶ 14, 16, 26). Beyond her own admission that she would have seen it had she looked down, she has alleged no facts suggesting the spilt hair cream—and the inherent risks of slipping on it—was not obvious to a

6

person exercising ordinary care. (*See* Dkt. 32; Dkt. 32-9). Therefore, there is no genuine dispute over the nature and condition of the spilt substance, so it was open and obvious as a matter of law. *See Bruns*, 21 N.E.3d at 690 (holding that nature of sidewalk crack plaintiff tripped on was well-documented and undisputed, and so "open and obvious as a matter of law"); *Dunn* at 908 (stating a "leaning stack of insulation" at a retail warehouse "constituted an open and obvious condition" that a reasonable person would avoid standing under); *see also, e.g.*, *Reid v. Kohl's Dept. Stores, Inc.*, No. 06-cv-472, 2007 WL 2778639, at *3 (N.D. Ill. Sept. 19, 2007), *aff'd on other grounds*, 545 F.3d 479 (7th Cir. 2008) (finding spilt pink milkshake on white tile floor "open and obvious," even when unclear plaintiff actually saw it before slipping, because "she could have easily seen it" as nothing distracted her or blocked view).

Illinois law recognizes two exceptions to the open-and-obvious doctrine that impact the duty analysis: the "distraction exception," and the "deliberate encounter exception." *Bruns*, 21 N.E.3d at 691 (citing *Sollami v. Eaton*, 772 N.E.2d 215, 223–24 (2002)). When either exception applies, the landowner should anticipate potential harm and owes a duty to its invitee despite a condition's known or obvious danger. *Id.* (citing Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)); *see also id.* ("Whereas operation of the open and obvious rule negatively impacts the foreseeability and likelihood of injury, application of an exception to the rule positively impacts the foreseeability and likelihood of injury."). The first exception applies "where the possessor [of land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Id.* (internal citations omitted). The second exception applies "where the possessor [of land] has reason to expect that the invitee will proceed to encounter the known or obvious danger because

to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Id.* (internal citations omitted).

That said, neither exception to the open-and-obvious doctrine applies here. First, for the distraction exception to apply, the plaintiff must supply evidence "from which a court can infer that plaintiff was actually distracted." *Id.* Here, nothing in the record suggests Hillsamer was distracted while in the shampoo aisle for ten to fifteen minutes. (*See* Dkt. 32-9 ¶¶ 9, 11–15). She was presumably looking on the shelves for shampoo or other products to purchase rather than at the ground. But, without more, "the mere fact of looking elsewhere [than the ground] does not constitute a distraction." *Bruns*, 21 N.E.3d at 692. Hillsamer has provided no evidence that something distracted her from seeing the spilt hair cream in the aisle; she just did not happen to see it, despite its obvious presence. (Dkt. 32-9 ¶¶ 14, 26).

Nor does the deliberate-encounter exception apply. This exception "has most often been applied in cases involving some economic compulsion," such as when a defendant could have reasonably foreseen a plaintiff would knowingly risk injury to do his job or take the most efficient route to a worksite. *Sollami*, 772 N.E.2d at 223–24 (citing *LaFever v. Kemlite Co.*, 706 N.E.2d 441, 448 (Ill. 1998); *Ralls v. Village of Glendale Heights*, 598 N.E.2d 337, 344-45 (Ill. App. Ct. 1992)). Hillsamer says nothing about her need to encounter the obvious risk of a slippery substance in her path. Nothing in the record, including her own testimony, indicates Hillsamer had to approach the spill to reach a particular product or pass through the aisle without avoiding it.

As the spilt hair cream was an open-and-obvious hazard to which no exception applies under Illinois law, the undisputed facts here weigh against imposing a duty on Walmart. "Application of the open and obvious rule affects the first two factors of the duty analysis: the foreseeability of injury, and the likelihood of injury. Where the condition is open and obvious, the

8

foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Bruns*, 21 N.E.3d at 690. In other words, the law expects ordinary people to take some care for their own safety. Walmart had little reason to anticipate Hillsamer's injury from the spilt hair cream. It is not reasonably foreseeable that an ordinary customer standing in the shampoo aisle for ten to fifteen minutes comparing shampoo brands would fail to see a distinctly colored substance in their path, with a broken container lying next to it, walk through it, and slip. The Lansing Walmart is one of the largest such stores in the area and open to customers 16 hours per day. (Dkt. 32-9 ¶¶ 57–58). Establishing a duty for Walmart to guard against all conceivable customer injuries from obvious product spills at all times would impose too great a burden in such circumstances. *See Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001) ("[T]he duty of inspection and inspection and clean up does not require continuous patrolling of the aisles; the cost would be disproportionate to the benefit." (internal citations omitted)).

**B. Breach**

Even if the spilt hair cream was not an "open and obvious" condition and Walmart owed a duty to Hillsamer in this case, Walmart did not breach its duty. A business breaches its duty to a customer who slips on a foreign substance if the customer demonstrates "(1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the business had constructive notice of the substance." *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016) (citing *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014)).

    *i.    No Evidence of Negligent Placement of the Spilt Hair Cream*

To determine whether a defendant's negligence caused the foreign substance to be on the floor, the plaintiff must "(1) demonstrate that the foreign substance was related to the defendant's

9

business, and (2) offer some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that [the] defendant . . . rather than a customer, dropped the substance on the premises." *Piotrowski*, 842 F.3d at 1038–39 (internal citations omitted); *see also Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 441 (Ill. 1958) (describing same).

The parties agree Hillsamer slipped on a Walmart product on the shampoo aisle floor. (Dkt. 32-9 ¶¶ 12-15, 32-34; Dkt. 29-2; Dkt. 36 ¶ 56). But Hillsamer offers neither direct nor circumstantial evidence to indicate Walmart employees, rather than a customer or other third party, more likely spilled the product. (Dkt. 32 at 6–7). There is no evidence, for example, that a Walmart employee was stacking or straightening the shelves at the time. Hillsamer admits she does not know who spilled the hair cream, how the product got on the aisle floor, or if any of the Walmart employees knew of the spill before her fall. (Dkt. 32-9 ¶¶ 20, 22–24). Nor did any Walmart employee know how the spill happened. (*Id.* ¶¶ 38, 43, 53). Hillsamer could only speculate that because the product was sold in a shelved area in the store, Walmart's negligence more likely than not caused the spill. (Dkt. 32 at 6–7 ("The hair product on the floor was sold by the defendant, related to defendant's business, and was in a location where the defendant displayed the product for purchase. Further, the shelves in the area where the product was stocked, were in disarray, and the container, such that it could roll off the shelve [sic] and onto the floor. Based upon this evidence, it is more probable that Defendant's employees dropped the product on the floor, or otherwise caused the container of hair product to roll from the shelve [sic], and hair crème [sic] to be on the floor.")). Yet, this mere speculation could similarly be used to say another customer knocked the cream on the floor or even the plaintiff. But the speculation is not based in fact. Such speculation cannot "survive summary judgment." *Piotrowski*, 842 F.3d at 1039 (holding plaintiff's

10

mere speculation that defendant's action led to spilled rocks insufficient to survive summary judgment); *Zuppardi*, 770 F.3d at 650 (holding legally insufficient plaintiff's speculation that Walmart "was responsible for spilling" water on the floor because an employee may have been stocking soda and water nearby). Customers peruse Walmart shelves for products, and nothing in Hillsamer's account showed employees more likely caused the spill than other customers. There is nothing in the record to suggest that the shampoo is displayed in such a way that would make it more likely than not that a Walmart employee knocked it off the shelf.

        ii.       *No Evidence of Actual or Constructive Notice*

Without evidence Walmart spilled the hair cream, Hillsamer must give some evidence Walmart knew or should have known it was there. *Zuppardi*, 770 F.3d at 650–51; *see also Haslett v. United Skates of Am., Inc.*, 136 N.E.3d 172, 185 (Ill. App. Ct. 2019) ("Without any such evidence [of defendant action creating slipping hazard], the defendants can only be held liable if they knew of the hazard's presence, *i.e.*, had either actual or constructive notice."). The parties agree neither Walmart nor its employees had actual notice of the spilt hair cream in the store's shampoo aisle before Hillsamer's fall. (Dkt. 32-9 ¶¶ 19, 27, 35, 43, 50). Rather, Hillsamer contends Walmart had constructive notice. (Dkt. 32 at 7–11).

A business has constructive notice of a spill when evidence shows it had been there long enough that a defendant exercising ordinary care would have discovered it. *Piotrowski*, 842 F.3d at 1040 (citing *Donoho*, 148 N.E.2d at 438); *Zuppardi*, 770 F.3d at 651. No bright-line rule sets a specific timeframe sufficient for constructive notice, but the plaintiff must present some evidence to infer enough time for the substance's discovery. *Zuppardi*, 770 F.3d at 651–52 (quoting *Reid v. Kohl's Dept. Stores, Inc.*, 545 F.3d 479, 482 (7th Cir. 2008)). Illinois law looks to "the circumstances of the particular case to determine if the length of time gave rise to notice." *Reid*,

11

545 F.3d at 483 (citing *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 604 (7th Cir. 2001)). Hillsamer argues Walmart had constructive notice—it had sufficient time to learn of the spill—simply because if Walmart employees were conducting periodic inspections of the aisles according to policy, (Dkt. 36 ¶¶ 61–62), they would have seen the spill and cleaned it up before she arrived. (Dkt. 32 at 10). Because the spill was in the aisle before Hillsamer got there, Walmart must not have patrolled carefully or often enough; thus, Hillsamer argues, Walmart was negligent. *Id.*

But Hillsamer backs up this conclusory argument with next to no evidence of how much time elapsed between the spill and her fall. Nor does she contextualize how often Walmart employees patrolled the aisles so that a jury could infer its insufficiency. Hillsamer was in the shampoo aisle about ten to fifteen minutes before she fell. (Dkt. 32-9 ¶ 13). As this is the only concrete statement of time either party has offered, the Court will treat fifteen minutes as the minimum length of time the cream could have been on the floor before Hillsamer fell. She arrived in the aisle no more than fifteen minutes before falling and did not see the spill happen. (*Id.*; Dkt. 32-9 ¶ 14).

While inferences in Hillsamer's favor from the undisputed facts can establish the spill had been on the ground for at least fifteen minutes, Hillsamer provides no evidence it was there for any longer than fifteen minutes. She does not know how long the substance was on the floor before arriving in the aisle. (Dkt. 32-9 ¶ 25). Neither Hillsamer nor Walmart's three employees who responded to her fall—Bomer, King, and Brady—saw any dirt, shopping cart tracks, or garbage in the spilt hair cream suggesting it was on the floor any longer. (Dkt. 32-9 ¶¶ 22, 41, 46, 54). Critically, Hillsamer does not show how fifteen minutes—under the specific circumstances of this case—was sufficient time for Walmart to have found it, given Walmart's "periodic" patrols of the large store's many aisles. *See Peterson*, 241 F.3d at 604–05 (emphasizing specific circumstances where employees "constantly" patrolled aisles may suffice to give constructive notice of spill

present for only ten minutes); *see also Hresil v. Sears, Roebuck & Co.*, 403 N.E.2d 678, 679–80 (Ill. App. Ct. 1980) (holding store had no constructive notice of spill present for at least ten minutes when store was not busy and most employees were by store exits).

Hillsamer argues there is a triable issue of fact as to whether Walmart had constructive notice of the spill because its policies and procedures require employees to inspect the store's aisles periodically. (Dkt. 32 at 9–10; *see also* Dkt. 36 ¶¶ 62–63). She relies heavily on *Peterson v. Wal-Mart Stores, Inc.* to argue Walmart's periodic inspections establish constructive notice *per se*. (*See* Dkt. 32 at 10 ("[I]f Defendant's many associates and maintenance personnel conducted periodic daily inspections of the aisles . . . . it is implicit that Defendant's employees may have been negligent for failing to notice and clean-up the spill.")). First, Walmart's internal policies create no legal duty independent from Illinois law. *Tafoya-Cruz v. Temperance Beer Co.*, 178 N.E.3d 182, 195–96 (Ill. App. Ct. 2011); *Zuppardi*, 770 F.3d at 652 ("Although Wal-Mart's internal policy requires employees to continuously monitor the 'action alleys,' this goes above and beyond the duties required of businesses by Illinois courts and does not create a new legal standard of ordinary care requiring the same.").

Moreover, *Peterson*'s circumstances differed. In *Peterson*, the plaintiff was in an aisle for ten minutes before slipping on lotion from a store product. 241 F.3d at 604. The court thus assumed the spill had occurred at least ten minutes before the fall—arguably, but not necessarily, too short of time to establish the store's constructive notice under the specific facts in that case. *Id.* at 605. But crucially in *Peterson*, the defendant store's employees had testified to patrolling aisles "constantly," and two employees had walked the aisle mere minutes before plaintiff's fall without seeing a spill. *Id.* The court thus held a jury might reasonably find that defendant's employees had constructive notice of the spill under those circumstances—even within a short ten-minute

13

timeframe—because during their constant patrol and recent presence, they might have carelessly failed to notice the spill. *Id.* at 605.

But here, there is no evidence Walmart employees "constantly" patrolled aisles. (Dkt. 32 at 9). Walmart's policies "require employees to clean as they work, make sure that merchandise is safely stacked and conduct periodic daily inspection and maintenance." (Dkt. 36 ¶ 62). This fact on its own, however, does not mean spills will be discovered immediately, nor yet within any given timeframe. While Walmart must "be alert to the possibility of spillage to notice it and clean it up promptly," there is no duty of continuous inspection in a large, self-service store. *Peterson*, 241 F.3d at 605.

Hillsamer can only establish the spill was on the ground for at least fifteen minutes, and other than pointing to general housekeeping policies, she does nothing to show fifteen minutes sufficient under the circumstances for Walmart to have had constructive notice of the spill. The Lansing store is one of the biggest in the area and open to the public for 16 hours per day, (Dkt. 36 ¶¶ 58–59); employees cannot be everywhere at once. Certain circumstances might call for high-frequency monitoring for spills, such as heavy customer traffic. *See Zuppardi*, 770 F.3d at 652; *Peterson*, 241 F.3d at 604–05; *Hresil*, 403 N.E.2d at 680. Hillsamer alleges no such circumstances here. Nor does she show any records to infer how frequently, on average, Walmart employees patrolled the aisles that day or any day. Walmart does not maintain daily maintenance and inspection logs, (Dkt. 36 ¶¶ 63–64), and the record contains no security camera footage of the shampoo aisle—nor any other aisle—to show how frequently employees inspected it. Without such evidence, Hillsamer cannot support an argument that Walmart failed to follow even its general policies of periodic inspection, much less how a slippery substance was on the floor long enough to give Walmart constructive notice of its presence. (Dkt. 32 at 11; *see generally* Dkt. 36 ¶¶ 61–62).

### C. Conclusion

Walmart had no duty to protect the Plaintiff from the open-and-obvious nature of the spilt hair cream. Even if Walmart owed Hillsamer such a duty, she failed to present any evidence that Walmart caused the cream to be on the floor or had either actual or constructive notice of its presence. As Hillsamer fails on both the duty and breach elements of negligence, the Court need not address causation. Walmart's motion for summary judgment [27] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: September 6, 2022